IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MONIQUE L. HOWARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-0795-N |
| | § | |
| PEOPLE'S CHOICE HOME LOAN, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant People's Choice, Inc.'s ("People's Choice") Motion for Summary Judgment filed on May 4, 2005. For the reasons stated below, the Court grants the motion in part, and declines to exercise jurisdiction over the negligent hiring claim.

### I. FACTUAL BACKGROUND

People's Choice employed Plaintiff Monique Howard from March 2003 until she resigned in December 2003. When Howard met James Kimmons, her supervisor, at an interview their interaction was strictly professional. However, Howard contends that on her second interview, Kimmons repeatedly told her that she was attractive and suggested that he wanted to date her. Howard claims she strongly stated that she did not and would not mix business with pleasure, date married men, and that Kimmons should never touch her. Afterwards, Howard claims that Kimmons called her to apologize and offered her a job several days later.

Howard alleges that three generalized categories of conduct contributing to a hostile work environment occurred after she began her job.[1] First, around early June, an employee of a customer of People's Choice, touched her buttocks. Howard told Kimmons about the incident the same day and Kimmons permitted her to not visit the account afterward. Howard chose to call on the account by telephone.

Second, Howard contends that during her employment Kimmons harassed her through frequent compliments. When asked to identify specifics, she mentioned that Kimmons would call her to talk about personal issues beginning in April. Also, Howard sent inappropriate emails. One such email stated that Kimmons found Howard "attractive," but needed to keep her "in perspective."

Finally, on June 9, Howard met with Kimmons in his office to discuss some problem accounts. At the end of the meeting, Howard claims that Kimmons walked up to her and touched her breast. Howard left running out of Kimmon's office. After June 9, Howard contends that she was so emotionally distraught that she stopped working her accounts.

---

[1] Howard also halfheartedly contends that she suffered quid pro quo discrimination because the alleged delay closing her loans, described more fully below, constituted a tangible employment action. The Supreme Court has held that a tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Industries v. Ellerth*, 524 U.S. 742, 761 (1998). It "requires an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 762. The alleged delay in closing Howard's loans falls under none of those categories.

Howard went to the Dallas office and met with Kimmons alone in his office while she surreptitiously taped him on a hidden recorder in her purse.

Howard says that she reported the harassment to Cindy Rosensbush, the Director of Human Resources, on or about August 1 and only after James Kimmons had submitted information regarding the alleged harassment on his own to Rosenbush. Within days Denise Schnur replaced Kimmons as Howard's supervisor. People's Choice warned Kimmons not to have any contact with Howard.

Rosenbush subsequently proceeded to investigate the matter. During her investigation, Rosenbush found the emails Kimmons had sent to Howard. Rosenbush's investigation also revealed that no other employees had witnessed Kimmons conduct himself inappropriately. Kimmons maintained his denial that he touched Howard's breast and Rosenbush found no witnesses to the touching incident to substantiate it.

Rosenbush reported the results of her investigation to Dwayne Barfell, Kimmons' direct supervisor. Barfell reprimanded Kimmons for his conduct and informed him that his emails to Howard were inappropriate and displayed poor managerial judgment. Barfell told Kimmons that any further inappropriate conduct would lead to discipline, including termination. People's Choice required Kimmons to attend a sexual harassment training session, which Kimmons did.

Unknown to People's Choice, Howard started working for Citigroup in September 2003. Howard did not submit any loans during September, October, or November. Her pay, hours, benefits, and job responsibilities did not change. In December, Howard resigned her

employment at both places and started her own business the following month. Before resigning, Howard requested that People's Choice let her continue her health benefits, which People's Choice declined to do.

Howard filed suit in federal court, alleging sexual harassment under both Texas Labor Code § 21.051, *et seq.* ("TCHRA") and the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"). People's Choice moved for summary judgment. The Court now grants People's Choice's motion for the sexual harassment claims, the assault claims, and the claim for intentional infliction of emotional distress.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule 56(c) states that the party moving for summary judgment has the burden of showing that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Harbor Ins. Co. v. Trammel Crow Co.*, 854 F.2d 94, 98 (5th Cir. 1988), cert. den. 489 U.S. 1054. In the summary judgment context the Court is to accept the nonmovant's evidence and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. HOWARD DOES NOT PRESENT A PRIMA FACIE CASE OF HOSTILE WORK ENVIRONMENT

Sexual harassment that is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment'" violates Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986) (quoting Henson v. City of Dundee, 682 F.2d 897, 904 (11th Cir. 1982). To establish a prima facie case for sexual harassment, Howard must show that: (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 523 (5th Cir. 2001). A hostile work environment claim requires the presence of a work environment that a reasonable person would find hostile or abusive. *Id*. "Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Id.* at 523-24 (citing *Walker v. Thompson*, 214 F.3d 615, 626 (5th Cir. 2000)).

Here Howard alleges there are three general categories of offensive conduct that occurred, as listed above. First, a client grabbed Howard's buttocks. Second, Kimmons made stray comments about the Howard's attractiveness, sent emails stating, among other things, that he found Howard attractive, and called her at odd hours. Third, Kimmons

allegedly touched one of Howard's breasts. While *Kimmons'* conduct was certainly inappropriate, it is insufficient to show that *People's Choice* required Howard to work in a hostile work environment. *Garziano v. E.I. Du Pont de Nemours & Co.*, 818 F.2d 380, 387 (5th Cir. 1987); *see also Frank v. Harris County*, 118 Fed. Appx. 799, 803 (5th Cir. 2004) (plaintiff may state Title VII claim against employer for nonemployee's conduct only if employer knew or should have known of the conduct and failed to take immediate and corrective action). The incident involving the People's Choice customer's employee does not reflect any kind of hostile work environment on the part of People's Choice. Employers may be liable under Title VII for the conduct of non-employees in the workplace when the employer knows of the harassment but fails to act. Here the evidence is undisputed that People's Choice took prompt corrective action once Howard informed it of the incident. Accordingly, this third-party conduct cannot constitute any hostile work environment by People's Choice.

Kimmons' touching Howards' breast and the stray comments, by themselves, were not sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. The Fifth Circuit has at least twice held that more severe conduct did not, as a matter of law, constitute a hostile work environment. In *Hockman*, the Fifth Circuit found that the defendant's actions of making one remark to the plaintiff about another employee's body, slapping the plaintiff's buttocks with a newspaper, grabbing or brushing against the plaintiff's breast or buttocks, attempting to kiss the plaintiff on one occasion, and standing in the door of the women's bathroom while the plaintiff was washing

ORDER – PAGE 6

her hands did not qualify as a hostile work environment. *Hockman v. Westward Communs., LLC*, 407 F.3d 317, 328-29 (5th Cir. 2004). In *Shephard*, the Fifth Circuit ruled judgment as a matter of law appropriate where coworker touched her arm on several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her, and also had told plaintiff that "your elbows are the same color as your nipples," and "you have big thighs" while he simulated looking under her dress. *Shephard v. Comptroller of Pub. Accounts*, 168 F.3d 871, 872 (5th Cir. 1999).[2] Kimmons' conduct is less egregious than the conduct the Fifth Circuit held was not a hostile work environment in both *Hockman* and *Shephard*. Accordingly, while Kimmons' alleged actions are inappropriate and might well be actionable against him personally, they are insufficient as a matter of law to impose liability on People's Choice under Title VII. Because Howard fails to show a prima facie case of a hostile work environment, the Court grants People's Choice's motion for summary judgment on Howard's Title VII claim.

Because the Court evaluates hostile work environment claims under the TCHRA in the same manner as sexual discrimination claims brought under Title VII, the analysis remains the same for Howard's TCHRA claim. *See Shackelford v. Deloitte & Touche*, 190 F.3d 398, 404 n.2 (5th Cir. 1991); *Thomas v. TPI Staffing, Inc.*, 2005 U.S. Dist. LEXIS 20027, at *5 n.3 (S.D. Tex. June 29, 2005). Accordingly, the Court grants People's Choice's

---

[2]In contrast, in *Mota* the Fifth Circuit found that evidence of repeated aggressive sexual advances accompanied with veiled threats of job loss and physical touching in the face of the plaintiff's adamant refusals, were sufficiently extreme to qualify as a hostile work environment. *Mota,* 261 F.3d at 524.

motion for summary judgment on Howard's Title VII and Texas Labor Code hostile work environment claims.

### IV. RETALIATION CLAIM

Howard also alleges retaliation. To establish a prima facie case of retaliation, under Title VII, she must demonstrate that "(1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997).

Because People's Choice did not constructively discharge Howard and because she resigned her employment with People's Choice, she is unable to show a prima facie case. To demonstrate constructive discharge, Howard must offer evidence that her working conditions were so intolerable that a reasonable employee would feel compelled to resign. *Barrow v. New Orleans S.S. Ass'n.*, 10 F.3d 292, 297 (5th Cir. 1994). The test for constructive discharge is objective, *Guthrie v. J.C. Penny Co., Inc.*, 803 F.2d 202, 207 (5th Cir. 1986), and "to prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992) (citing *Pittman v. Hattiesburg Municipal Separate School District*, 644 F.2d 1071, 1077 (5th Cir. 1981))

Having failed to demonstrate harassment severe or pervasive enough for a hostile work environment claim, Howard's claim for a constructive discharge of necessity fails.

Additionally, the Court notes that Howard's pay, benefits, and job responsibilities did not change after she reported Kimmons' alleged harassment. Howard rests her constructive discharge claims solely on allegations that Kimmons did not allow her files to close on time, causing Howard to lose her commissions and be constructively discharged. However, the undisputed evidence shows that Howard did not submit loans towards the end of her employment. Howard has presented no competent summary judgment evidence that Kimmons did anything to interfere with her loans' closing or her ability to submit loans. Mere allegations are not enough to survive summary judgment. It is not sufficient on summary judgment to rely on pleadings. *See* FED. R. CIV. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"). Howard thus fails to show a fact issue on constructive discharge and, as a result, fails to establish a prima facie case of retaliation. Accordingly, the Court grants People's Choice's motion for summary judgment on the retaliation claim.

## V. OTHER STATE LAW CLAIMS

Howard's claim for assault fails because People's choice is not vicariously liable for Kimmons' alleged tortious acts. An employer is vicariously liable only for the acts of its servants committed in the course and scope of their employment. *GTE Southwest, Inc. v. Bruce*, 998 S.W. 2d 605, 617 (Tex. 1999). This is because "the authority granted an employee does not ordinarily include the power to attack someone." *Garrett v. Great*

*Western Distrib. Co.*, 129 S.W.3d 797, 800 (Tex. App. – Amarillo 2004, pet. denied). The Texas Supreme Court has also stated that "[u]sually assault is the expression of personal animosity and is not for the purpose of carrying out the master's business." *Texas & P. Ry. Co. v. Hagenloh*, 247 S.W.2d 236, 239 (Tex. 1952). People's Choice, as evidenced by its sexual harassment policy, does not condone employee's touching each other in an offensive manner. Thus People's Choice cannot be vicariously liable for Kimmons' alleged assault. Accordingly, the Court grants People's Choice motion for summary judgment on the assault claim.

Howard's claim for intentional infliction of emotional distress fails because the various statutory causes of action leave no "gap" for a common law tort to fill. Under Texas law, intentional infliction of emotional distress requires proof that: (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe. *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 195 (5th Cir. 1996) (citing *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989)). Conduct is "outrageous," for purposes of an intentional infliction of emotional distress claim, "if it surpasses all bounds of decency, such that it is utterly intolerable in a civilized community." *Id.* (citing *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir.1993)). However, under Texas law, intentional infliction of emotional distress is a "'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies. Even if other remedies do not explicitly preempt the tort, their availability leaves

no gap to fill." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). Here, Howard's intentional infliction allegations stem from the same conduct that supports her sexual harassment and retaliation claims. Because these remedies were available, there was no gap for the intentional infliction of emotional distress claim to fill, entitling People's Choice to summary judgment on this claim. Accordingly the Court grants People's Choice's motion for summary judgment as to the intentional infliction of emotional distress claim.

Finally, the Court declines to exercise its jurisdiction over the remaining negligent hiring claim pursuant to 28 U.S.C. § 1367(c)(3). Accordingly, the Court dismisses that claim without prejudice.

Signed March 8, 2006.

_____
David C. Godbey
United States District Judge